**In re Joseph WILEY and Linda Wiley, Debtors.**

**Joseph Wiley and Linda Wiley, Plaintiffs,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 97–08047–3P7.**
**Adversary No. 98–67.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 7, 1999.

Janet A. McSharar, Indianapolis, IN, D. Lamar Smith, Jacksonville, FL, for Plaintiffs.

Bruce T. Russell, Dept. of Justice, Washington, DC, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

Joseph Wiley ("Plaintiff") and Linda Wiley (collectively "Debtors") commenced the instant adversary proceeding after objecting to Claim 18 of the Internal Revenue Service (the "IRS") to Determine Dischargeability of Debt and to Determine Extent of Tax Liability Pursuant to 11 U.S.C. § 505. (Adv. Doc. 1.) The portion of the federal tax debt at issue in this proceeding is the unsecured priority claim in the aggregate amount of $736,913.64. This amount is reported as a tax debt for a trust fund recovery penalty assessed against Plaintiff pursuant to 26 U.S.C. § 6672 resulting from unpaid employment taxes collected from employees of NMI Systems, Inc. and its wholly owned subsidiary, Network Management Systems, Inc. (collectively "NMI") for the first and second calendar quarters of 1993 ("periods in issue").

The Court combined the trial of the adversary proceeding with Debtors' objection to claim 18. At trial on January 5, 1999 Linda Wiley was dismissed as a party plaintiff because the trust fund recovery penalty claim of the IRS was unique to and only assessed against Plaintiff. (Adv. Doc. 32; Tr. 28–29.) Upon the evidence presented at trial, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. NMI utilized computer hardware and created local area networking systems for both commercial and governmental enterprises. (Tr. 19–20, 122.)

2. As of mid–1993, NMI had approximately 300 employees. (Tr. 123.)

3. Francis A. Dramis, Jr. ("Dramis") was the Chief Executive Officer ("CEO") of NMI. (Tr. 39.)

4. Dramis and Plaintiff became acquainted in 1982 while employed together at AT & T in Jacksonville, Florida. Plaintiff regularly kept in touch with Dramis from that point forward. (Tr. 39–40.)

5. Plaintiff has a bachelor of science degree in accounting, a master's degree in business administration and has passed the exams to become a certified public accountant. (Tr. 38, 116–17.) In August, 1991, Dramis arranged for NMI to employ Plaintiff with the company as Executive Vice President of Finance and Administration. (Tr. 41–43; Pl.'s Ex. 1.)

6. Plaintiff was hired to assist and advise Dramis as to the financial aspects related to the integration of certain companies that NMI had acquired. Plaintiff's position with NMI was senior to that of David Karish, the Vice President and Chief Financial Officer ("CFO"), who reported to Plaintiff directly. (Tr. 126–27; Def.'s Ex. 12.)

7. At the time Plaintiff was hired, NMI had approximately $40 million in annual revenue. (Tr. 124.)

8. Plaintiff became CFO of NMI in or about February, 1992. (Tr. 19, 44.) Plaintiff also became chargeable with the duties of Corporate Secretary. (Tr. 44; Pl.'s Ex. 2.)

9. At or about the time Plaintiff became CFO, Kathy Van Sleen ("Van Sleen") became Controller and Scott Hiller ("Hiller") became treasurer of NMI. Hiller was assigned to pay out and withhold federal employment and withholding taxes for NMI during the periods in issue. (Wiley dep. 75.) Plaintiff was responsible for the supervision of these two employees. (Tr. 59–61, 127.) Thus, as of early 1992, Plaintiff was responsible for the supervision and management of the accounting and treasury departments of NMI. (Tr. 44, 126–27; Pl.'s Ex. 2; Def.'s Ex. 12.)

10. Plaintiff participated in arranging primary and secondary financing for NMI. In promoting this endeavor, Plaintiff and Hiller negotiated and arranged for Silicon Valley Bank ("SVB") to replace Bank of Boston as NMI's senior lender. (Tr. 19, 46, 144.)

11. NMI's working capital was primarily obtained from a line of credit with SVB and a secondary loan from Kansallis Osaki Panki ("KOP"), a Dutch bank. The SVB line of credit was secured by NMI receivables. (Tr. 65, 145–47, 179–80.) Plaintiff and Hiller renegotiated the terms of both loans and had the payment periods extended through forbearance agreements. (Tr. 62, 72, 147, 151–52; Pl.'s Ex. 4.)

12. NMI's payroll account was with Sovereign Bank. (Van Sleen dep. 40.) In late 1992 and early 1993, Plaintiff worked directly with Sharon Steele, Director of Finance of NMI, in making cash decisions for the company. These decisions included insuring that wire transfers from NMI's operating account at SVB were made to the payroll account at Sovereign Bank. (*Id.* at 40–41.) In or about February, 1993, Kevin Phillips ("Phillips"), Assistant Controller of NMI, assumed these responsibilities for Sharon Steele. (*Id.* at 41.)

13. Plaintiff had signature authority over NMI corporate accounts. Plaintiff was a signatory on NMI's operating account with SVB and payroll account with Sovereign Bank during the periods in issue. (Tr. 156; Wiley dep. 61, 102.) During the second quarter of 1993, Plaintiff made a personal loan of approximately $20,000 to $30,000 to NMI so that the company could meet its employee payroll obligations. (Tr. 140–41; Wiley dep. 106.) Also, in the absence of the treasurer, Plaintiff occasionally wrote checks for NMI to cover company expenses. (Tr. 60; Van Sleen dep. 87–88.)

14. In the final quarter of 1992, Hiller was found to have misappropriated certain funds of NMI that had been committed to a secured creditor, Banyan Systems, Inc. ("Banyan"), a significant supplier of computer hardware to NMI. Also, in or about February, 1992, Plaintiff discovered that

Hiller had failed to timely remit delinquent payroll taxes for the fourth quarter of 1992. (Tr. 21–22, 89–90.) Hiller was subsequently fired. Upon Hiller's termination, Plaintiff relieved him of his duties as treasurer. (Tr. 90; Wiley dep. 40; Van Sleen dep. 56–57, 151.) Thereafter, Phillips became treasurer and assumed the responsibility of paying out and withholding employment taxes for NMI for the periods in issue. (Wiley depo. 75.)

15. On January 4, 1993 NMI entered into an agreement with Banyan that provided for the repayment of the previously diverted Banyan trust fund deposits. (Tr. 77, 169–74; Pl.'s Ex. 5.) Repayment was made during the periods in issue. (Van Sleen dep. 97.)

16. Plaintiff and Dramis held cash management meetings pertaining to the disbursement of NMI funds. (Tr. 87.) The cash management meetings were initiated in 1992, and as early as January, 1993 had been held on a weekly basis. (*Id.*) Hiller, Van Sleen, Phillips and Steele (collectively "The Finance Group") attended and participated in the cash management meetings. (Tr. 87–88, 175–76.) The Finance Group had the authority to direct payments for NMI obligations, including payments to the IRS for the unpaid payroll tax obligations. (Wiley dep. 101.) At the meetings, determinations were made regarding which obligations NMI would pay during the periods in issue. (Wiley dep. 90, 101.) Because of the precarious financial condition of NMI at this time, it was determined that only instrumental vendors would be paid and all other less pressing obligations would be deferred. (Tr. 88, 176–77; Wiley dep. 87–88.) The Finance Group was supervised by and reported to Plaintiff during the periods in issue. (Tr. 133; Wiley depo. 37; Van Sleen depo. 31.) Plaintiff also participated in the decision making when there was a significant disbursement issue. (Tr. 178.) Dramis testified that he relied on Plaintiff to make financial decisions and did not direct the day-to-day payment of payables. (Dramis dep. 78, 166–67.)

17. The Finance Group prepared weekly cash reports and financial reports for Plaintiff's review. (Tr. 177–78; Van Sleen dep. 64.) The reports were forwarded to NMI's lenders, board of directors and outside accountants. (Tr. 155.) Plaintiff reviewed NMI's tax returns that were prepared jointly by The Finance Group and NMI's outside accountants. (Tr. 155; Wiley dep. 108.) Plaintiff also submitted financial reports each month to the board of directors detailing the financial condition of NMI. (Tr. 136.) Further, Plaintiff participated in discussions with the board of directors and the officers of NMI regarding potential consequences of the unpaid payroll taxes for the periods in issue. (Tr. 137.)

18. In July 1993, NMI, with Plaintiff's assistance, began devising a plan to establish the relative priorities of the major categories of disbursements, including a strategy to pay the unpaid payroll taxes. (Tr. 93, 142; Pl.'s Exs. 7–8.) This plan was devised in an effort to keep NMI out of receivership and bankruptcy. (Tr. 142–43; Pl.'s Ex. 8.) Also, during the periods in issue, Plaintiff assisted NMI in its effort to cure the delinquent payroll tax liabilities by attempting to secure capital investments, offset the tax liabilities against NMI receivables and find a buyer for the government business or the business as a whole. (Tr. 133–35, 201; Dramis dep. 51–52.) About this time SVB stopped allowing NMI to draw on its line of credit. (Van Sleen dep. 99.)

19. NMI continued to pay vendors and suppliers, including Banyan, and continued to make its payroll disbursements through the periods in issue. (Tr. 200, 207; Van Sleen dep. 42.) Plaintiff also received bonuses in 1991, 1992 and during the periods in issue. (Tr. 159–60; Wiley dep. 104.) However, it appears that Plaintiff and Dramis were unaware as of February, 1993 and possibly until as late as May, 1993, that they could potentially face per-

sonal liability for the unpaid payroll taxes. (Tr. 138–39.)

20. In September, 1993, Plaintiff's employment with NMI was terminated. (Tr. 99.)

21. On October 21, 1997, Debtors filed a joint petition for relief under Chapter 13 of the United States Bankruptcy Code. (Doc. 1.) IRS filed a proof of claim on February 19, 1998. The portion of the federal tax debt at issue in this proceeding is the unsecured priority claim in the amount of $691,499.28 for taxes due plus interest to the petition date of $45,414.36, for an aggregate amount of $736,913.64. This amount is reported as a tax debt from a trust fund recovery penalty assessed against Plaintiff pursuant to 26 U.S.C. § 6672 resulting from unpaid employment taxes collected from employees of NMI during the periods in issue.

22. On March 31, 1998, Debtors objected to the IRS claim of a trust fund recovery penalty (Doc. 28) and commenced the instant adversary proceeding to Determine Dischargeability of Debt and to Determine Extent of Tax Liability Pursuant to 11 U.S.C. § 505. (Doc. 32.) Debtors did not challenge the income tax liabilities set forth on Claim 18 of the IRS in the aggregate amount of $2042.65 for tax year of 1995, or the aggregate amount of $906.26 for the tax year of 1996.

23. On June 30, 1998, the case was converted to Chapter 7. (Doc. 54.)

### CONCLUSIONS OF LAW

 Sections 3102(a) and 3402(a) of the Internal Revenue Code of 1954 ("IRC") require an employer to deduct and withhold income and social security taxes from wages paid to its employees. *See* 26 U.S.C. §§ 3102(a), 3402(a) (1999). Section 7501 of the IRC provides that the withheld taxes are to be held by the employer in a special trust fund for the benefit of the United States. *See* 26 U.S.C. § 7501 (1999). These trust fund taxes are for the exclusive use of the United States and are not to be used to pay the employer's business expenses. *See* 26 U.S.C. §§§ 3102(b), 3403, 7501(a) (1999). Once the federal income and social security taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against such employees' individual tax liabilities, regardless of whether or not the employer pays the withheld taxes over to the government and even though the credits may result in refunds to the employees. *See Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976). Therefore, the United States suffers a loss of revenue when trust fund taxes are not paid by the employer. *See id.*

 Section 6672[1] of the IRC was enacted to protect the United States against such losses by providing it with another source from which to collect the withheld taxes by imposing a 100 percent penalty for nonpayment of the trust fund taxes. *See* 26 U.S.C. § 6672 (1999). The purpose of the 100 percent penalty provision "is to permit the taxing authority to reach those [persons] responsible for the corporation's failure to pay the taxes which are owing." *White v. United States*, 178 Ct.Cl. 765, 372 F.2d 513, 516 (1967) (quot-

---

1. This section provides in pertinent part:

 Failure to Collect and Pay Over Tax, Attempt to Evade or Defeat Tax.

 (a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, *or not accounted for and paid over....* 26 U.S.C. § 6672 (1999); *see* 26 U.S.C. §§ 3102(a), 3402(a)(1) (1999) (requiring employers to withhold federal social security and income taxes from employees' wages); 26 U.S.C. § 7501(a) (1999) (withheld taxes constitute special fund held in trust for United States); 26 U.S.C. § 6671(b) (1999) (defining "person" as officer or employee of corporation under duty to perform act in respect to which violation occurs).

ing *Dillard v. Patterson*, 326 F.2d 302 (5th Cir.1963)).

■ Section 6672 imposes liability upon (1) a responsible person (2) who has willfully failed to perform a duty to collect, account for, or pay over federal employment taxes. *Williams v. United States*, 931 F.2d 805, 809 (11th Cir.1991); *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir.1987). A § 6672 assessment against a responsible person is equivalent to the assessment of a tax. 26 U.S.C. § 6671(a) (1999); *see In re Ribs–R–Us, Inc.*, 828 F.2d 199, 200 (3d Cir.1987). Once the IRS assesses a tax, a rebuttable presumption arises that the assessment is correct. *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971). Thus, the IRS's introduction of certified copies of the assessment shifts the burden to Plaintiff of coming forward with a preponderance of evidence to show that the assessment against him is incorrect. *See id.; see also United States v. Janis*, 428 U.S. 433, 440–41, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). Plaintiff can meet this burden by establishing either (1) that he is not a responsible person within the meaning of the statute or (2) that he did not willfully fail to pay the amount due the IRS. *See Whiteside v. United States*, 26 Cl.Ct. 564, 567 (1992); *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 927 (3d Cir.1990). Therefore, if an individual's conduct fails to meet either condition, the IRS may not assess the § 6672 penalty. *See McCarty v. United States*, 194 Ct.Cl. 42, 437 F.2d 961, 967 (1971).

Plaintiff seeks to have the Court determine that he is not personally liable for the trust fund taxes due the IRS from NMI, his former employer, for the periods in issue because he is not a responsible person and his actions were not willful. (Adv. Doc. 37.) Defendant contends Plaintiff is a responsible person who willfully failed to perform his duty to collect, account for, or pay over the federal employment taxes. (Adv. Doc. 36A.) The Court will first address whether Plaintiff is a responsible person pursuant to 26 U.S.C. § 6672.

## I. Responsible Person

■ A responsible person within the meaning of § 6672 includes any person required to collect, account for, or pay over taxes withheld from the corporation's employees. *Thibodeau*, 828 F.2d at 1503 (citing *Mazo v. United States*, 591 F.2d 1151, 1153 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979)). Courts have generally taken a broad view of who constitutes a "responsible person" under § 6672. *Williams*, 931 F.2d at 810 (citing *Smith v. United States*, 894 F.2d 1549, 1552 (11th Cir.1990); *Slodov v. United States*, 436 U.S. 238, 246–50, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *Liddon v. United States*, 448 F.2d 509, 512 (5th Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972)). Additionally, courts have held that this section applies to "all responsible persons, not just to the most responsible person." *See Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir.1991); *Thibodeau*, 828 F.2d at 1504.

■ Responsibility is a "matter of status, duty and authority, not knowledge." *Mazo*, 591 F.2d at 1156. Realistically read, § 6672 encompasses "all of the individuals who are so connected with the corporation as to have the responsibility and authority to avoid the default which constitutes a violation of the particular Internal Revenue Code Section or sections involved ...." *See Bolding v. United States*, 215 Ct.Cl. 148, 565 F.2d 663, 671 (1977). An individual need not have the final say as to which creditors are to be paid, or have ultimate authority and power over the affairs of a corporation in order to be found liable under § 6672. *See Neckles v. United States*, 579 F.2d 938, 940 (5th Cir.1978). Liability stems from an individual's significant, rather than absolute control over the corporation's finances. *See id.* The fact that there may be other persons who are responsible is no defense;

there may be, and often is, more than one responsible person. *See Roth v. United States,* 779 F.2d 1567, 1571 (11th Cir.1986). As long as significant, albeit not necessary exclusive, authority to control corporate financial decisions is retained, the requirement of responsibility is met even if such rights are not exercised and even if there is a lack of involvement in the day-to-day affairs of the corporation. *See White,* 372 F.2d at 516; *Smith,* 894 F.2d at 1553; *Hartman,* 538 F.2d at 1340.

██ The Eleventh Circuit Court of Appeals has identified certain characteristics that are indicative of responsibility for § 6672 purposes. *George v. United States,* 819 F.2d 1008, 1011 (11th Cir.1987). These "[i]ndicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." *Id.; Roth,* 779 F.2d at 1571.

Plaintiff's argument that he is not a responsible person is premised on two main points. First, Plaintiff contends that he did not have the duty or authority to avoid the nonpayment of the withholding taxes. (Pl.'s Br. at 15.) Plaintiff attempts to add support to this argument by claiming that he was not hired for his financial expertise because there was already a CFO and treasurer in place at NMI at the time he was hired. Furthermore, Plaintiff directs the Court to his testimony that indicates the treasurer disbursed funds to creditors without his knowledge. Moreover, Plaintiff claims his role as secretary was only ministerial and, although he had check writing authority, he only wrote checks intermittently and not in the course of his normal employment. Plaintiff also indicates that he could not prevent the issuance of checks by withholding his signature and did not control the voting stock in NMI. (*Id.* at 16–17.)

Second, Plaintiff claims that Dramis exerted complete control over company disbursements, and therefore, Plaintiff did not have a choice among which creditors to pay. (Pl.'s Br. at 15.) Plaintiff points out that, while he may have provided input into the disbursement process, he could not compel, nor prohibit, the payment of bills. (*Id.* at 18.) Plaintiff cites *Williams v. United States,* 25 Cl.Ct. 682 (1992) and *Heimark v. United States,* 18 Cl.Ct. 15 (1989) for the proposition that courts are reluctant to find a person responsible pursuant to § 6672 if that person is dominated by another person in the company. (*Id.* at 17.)

██ For the reasons discussed below, Plaintiff's arguments are without merit. Plaintiff's official position was Executive Vice President of Finance and Administration. When Plaintiff was first hired in 1992, NMI was out of covenant with its senior lender. Plaintiff was instrumental in negotiating for and obtaining NMI a new lender. Subsequently, when the CFO left NMI, Plaintiff unofficially assumed the positions of CFO and corporate secretary. Also, after Plaintiff fired Hiller, he temporarily assumed the responsibilities of treasurer. As the evidence indicates, Plaintiff's responsibilities included overseeing The Finance Group, with both the treasurer and controller reporting to him. Additionally, Plaintiff played an important role in making personnel decisions as demonstrated by his firing of Hiller, and his subsequent assumption of the treasurer's responsibilities. Plaintiff also submitted financial reports each month to the board of directors detailing the financial condition of NMI. Although, standing alone, the fact that Plaintiff was a corporate officer is not legally sufficient for the Court to find him a responsible person, Plaintiff's status and duty with NMI, and significant control over the company's finances is ample evidence of responsibility for § 6672 liability purposes. *See Ghandour v. United States,* 36 Fed.Cl. 53, 60–61 (1996); *Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983).

■ Moreover, Plaintiff's independent authority to write checks and disburse funds for NMI, coupled with his financial involvement with the company, gave him the effective power to see to it that the taxes were paid. *See Hornsby v. IRS*, 588 F.2d 952, 953 (5th Cir.1979) (holding corporate officer with check-signing authority is "responsible person"); *see also Liddon*, 448 F.2d at 512 (noting liability for penalty not confined to disbursing officers with authority to draw or sign checks); *Roth*, 779 F.2d at 1571 ("Authority to pay in [the context of § 6672] means effective power to pay."). That Plaintiff had this authority is demonstrated by the fact that he occasionally issued checks without Dramis' or the treasurer's approval. *See id.* Moreover, in 1993, when NMI was delinquent on its 1992 taxes, Plaintiff made sure the taxes were paid. *See Brown v. United States*, 464 F.2d 590, 591 (5th Cir.1972), *cert. denied*, 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973) ("responsible person" was person successful in securing payment of withholding taxes during prior quarter). Thereafter, when NMI was in a financial crisis, Plaintiff became intimately involved in determining which creditors were to be paid first in order to keep the company alive. While the Court appreciates Plaintiff's difficult situation, the desire to continue in business is simply not justification for violating the trust imposed by law to pay taxes. *See Hill v. United States*, 368 F.2d 617, 621 (5th Cir.1966).

■ Plaintiff suggests that he is not a responsible person because, although he knew NMI was in default on its payroll taxes, he failed to make the payments because Dramis instructed him not to make them. Plaintiff's reliance on *Williams*, 25 Cl.Ct. 682, and *Heimark*, 18 Cl.Ct. 15, is misguided because an otherwise responsible person within the contemplation of § 6672 remains liable for failing to pay over the withheld funds despite being instructed by a superior not to pay the taxes. *See Howard*, 711 F.2d at 729 (noting fact that CEO may have fired sub-ordinate had he disobeyed order and paid taxes does not make subordinate any less responsible for their payment); *Roth*, 779 F.2d at 1571 (holding responsible person not relieved of obligation to remit withheld taxes by contrary instructions from superior officer); *Thibodeau*, 828 F.2d at 1504 (same); *see also Brown*, 464 F.2d at 591, n. 1 ("responsible person need not have final say on payment of bills and taxes"). Therefore, although Plaintiff reported to Dramis, and even if as alleged he served at Dramis' will, this does not affect Plaintiff's responsibility to collect, account for, or pay over to the government the withheld taxes. *Thibodeau*, 828 F.2d at 1504.

■ Moreover, Plaintiff's argument that he is not a responsible person because he delegated much of his responsibilities to subordinates, including the responsibility of issuing company checks, is faulty. Although reasonable cause may excuse the failure to collect, account for, or pay over withholding taxes, *Newsome v. United States*, 431 F.2d 742, 746 (5th Cir.1970), the mere delegation of responsibility to another does not constitute reasonable cause. *See Mazo*, 591 F.2d at 1155. The law does not permit an otherwise responsible person to delegate his duty to someone else and thus escape liability under § 6672. *See id.; Hornsby*, 588 F.2d at 953; *Barnett v. IRS*, 988 F.2d 1449, 1455 (5th Cir. 1993).

In *Thibodeau*, the Eleventh Circuit held that the taxpayer was a responsible person as a matter of law because he was the president, a director, and the resident agent of the employer during the relevant tax periods and because he was responsible for running the office, securing contracts, arranging financing, and conducting some hiring and firing. 828 F.2d at 1504. In the present case, Plaintiff was Executive Vice President of Finance and Administration, Corporate Secretary, and later assumed the responsibilities of CFO and treasurer. Plaintiff arranged financing, secured contracts, reviewed tax returns and was otherwise responsible for the day-

to-day finances of NMI. Plaintiff also had independent check writing authority and the authority to hire and fire employees. When viewing the evidence in total, it is clear that Plaintiff possessed virtually all the "indicia of responsibility" as set forth by the Eleventh Circuit Court of Appeals. *See George,* 819 F.2d at 1011; *Thibodeau,* 828 F.2d at 1503. In sum, the authority, powers and duties exercised by Plaintiff in the instant case, as recounted in the findings above, are more than sufficient to render him a responsible person within the meaning of § 6672. *See Thibodeau,* 828 F.2d at 1504; *George,* 819 F.2d at 1011.

## II. Willfulness

 Once it is established that an individual is a responsible person, the burden of proving a lack of willfulness falls squarely on that individual. *Smith,* 894 F.2d at 1553; *Thibodeau,* 828 F.2d at 1505. "Willfulness," as used in § 6672, simply means "a voluntary, conscious and intentional decision to prefer other creditors over the government." *See Denbo v. United States,* 988 F.2d 1029, 1033, n. 3 (10th Cir.1993) (noting every jurisdiction that has reached the issue has adopted this definition of willfulness). The Eleventh Circuit Court of Appeals has held that the willfulness requirement of § 6672 is satisfied if the responsible person has knowledge of payments to other creditors after he becomes aware of the failure to remit the withheld taxes. *Id.* The willfulness requirement is also met if the responsible person shows a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government...." *Newsome,* 431 F.2d at 745; *Mazo,* 591 F.2d at 1154 (finding reckless disregard includes failure to investigate or correct mismanagement after being notified taxes were due); *Turnbull,* 929 F.2d at 179. Willfulness, however, does not require a fraudulent intent or other bad motive on the part of the responsible person. *See Hewitt v. United States,* 377 F.2d 921, 924 (5th Cir.1967).

Plaintiff contends he did not act "willfully" because he "undertook different avenues to ensure that the taxes would be paid." (Pl.'s Br. at 23.) Initially, Plaintiff asserts that he pursued Dramis' strategy of keeping the government business alive so that it could be sold to pay NMI's delinquent taxes. Plaintiff also points out that he advanced approximately $30,000 of his own funds to pay NMI employees in order to keep the company viable. Plaintiff notes that, in pursuing this endeavor, he and Dramis relied in part on faulty advice by an outside tax attorney. (*Id.* at 24.) Further, Plaintiff suggests that during the periods in issue the necessary funds were not available to pay the delinquent payroll taxes. Also, Plaintiff claims that because § 6672 is a penalty provision designed only to punish a responsible party's willful behavior, it is inappropriate to assess it against him. (*Id.* at 25.)

 Plaintiff's arguments fail for several reasons. First, Plaintiff continued to manage the day-to-day financial operations of NMI during the periods in issue. In doing so, Plaintiff continued to pay creditors of NMI despite having full knowledge that the employment taxes owed to the IRS were unpaid. It is clear that once a responsible person is aware of the liability to the government, he is under a duty to ensure that the taxes are paid before any payments are made to other creditors. *See Mazo,* 591 F.2d at 1157. As noted *supra,* the desire to continue in business is not justification for violating the trust imposed by law to pay the taxes. *See Hill,* 368 F.2d at 621; *Thibodeau,* 828 F.2d at 1506 (noting willfulness requirement met when individual knows withheld funds are being used for other corporate purpose, regardless of individual's expectation that sufficient funds will be on hand on due date). In fact, "[u]sing these funds instead to finance the corporation not only increases the risk that the corporation will be unable to remit the taxes when due, but [it] constitutes [a] flagrant violation of the law." *Thibodeau,* 828 F.2d at 1506.

Further, NMI continued to pay salaries to employees, including salaries and bonuses to Dramis and himself, during the periods in issue. (Tr. 159–60; Wiley dep. at 103; Dramis dep. at 56.) Persuasive legal reasoning provides that even the payment of wages to employees constitutes willful conduct under § 6672 if the wages are paid at a time when the corporation is delinquent in paying over the withheld taxes. *See Sorenson v. United States,* 521 F.2d 325, 328 (9th Cir.1975) ("Employees to whom wages are owed are but a particular type of creditor."). There is simply no basis in law for preferring the wage obligation of employees over the withholding obligation to the government. *Id.* Thus, Plaintiff's argument that NMI did not have enough funds to pay the delinquent taxes is unavailing. Plaintiff had a duty to apply any available unencumbered funds to reduce the payroll tax liability. *See Mazo,* 591 F.2d at 1154. In the instant case, because NMI had sufficient unencumbered funds available during the periods in issue to pay its employees and other creditors, it had the means with which to pay the delinquent taxes. *See Williams,* 931 F.2d at 811; *see also Slodov,* 436 U.S. at 259, 98 S.Ct. 1778 (finding narrow exception, not applicable here, to § 6672 when creditor has perfected security interest in funds that would prime federal tax lien).

Moreover, Plaintiff's mistaken reliance on a tax attorney does not relieve him of his responsibility to pay over the withheld taxes. Plaintiff had full knowledge that the payroll trust fund taxes were delinquent for the periods in issue. Plaintiff consciously decided to pay other creditors, including NMI employees and himself, before paying the government. As a responsible officer of NMI, it was he who was ultimately responsible to make sure these taxes were paid. The law does not allow an otherwise responsible person to delegate his duty to someone else to escape liability under § 6672. *Hornsby,* 588 F.2d at 953; *Barnett,* 988 F.2d at 1455. Likewise, the Court does not believe the law permits a responsible person to rely on another's advice to escape such liability. The fact remains, Plaintiff made the voluntary, conscious and intentional decision to pay creditors in an attempt to keep the business alive. Thus, while Plaintiff's efforts to collect and remit the taxes withheld during the periods in issue were undoubtedly sincere, his failure to do so was willful as a matter of law. *See Williams,* 931 F.2d at 811.

### CONCLUSION

Based on the foregoing, because Plaintiff was required to collect, account for, and pay over taxes withheld from NMI's employees, he is a responsible person within the meaning of § 6672. Further, because Plaintiff made a voluntary, conscious and intentional decision to prefer other creditors over the government, his actions were willful as a matter of law. Thus, the Court finds that Debtors' Objection to Claim 18 of the IRS is not well taken, and is accordingly denied. Further, the Court finds Plaintiff personally liable for the portion of federal trust fund tax debt at issue is this adversary proceeding in the amount of $736,913.64. The Court will enter a separate order and judgment in accordance with these Findings of Fact and Conclusions of Law.